# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MOISES FRIAS-GUEVARA,          )
                               )
          Petitioner,          )
                               )
     v.                        )        1:11CR324-1
                               )        1:14CV175
UNITED STATES OF AMERICA,      )
                               )
          Respondent.          )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion to Vacate or Set Aside Conviction and Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion") (Docket Entry 56).[1]  For the reasons that follow, the Court should deny Petitioner's instant Section 2255 Motion.

## I.  BACKGROUND

This Court (per now-Chief United States District Judge William L. Osteen, Jr.) entered a Judgment against Petitioner after a jury found him guilty of conspiracy to distribute five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  (Docket Entry 40; see also Docket Entry 19 (Indictment); Docket Entry 30 (Verdict); Docket Entries 47-49 (Trial Tr.).)  The United States Court of Appeals for the Fourth

---

[1] Parenthetical citations refer to Petitioner's criminal case.

Circuit affirmed.  United States v. Frias-Guevara, 529 F. App'x 361 (4th Cir. 2013).[2]  Petitioner timely filed his instant Section 2255 Motion.  (Docket Entry 56.)  The United States responded (Docket Entry 62) and Petitioner replied (Docket Entry 65).

## II.  DISCUSSION

Petitioner's Section 2255 Motion asserts that his counsel provided ineffective assistance by failing:

A) "to bring Jesus Morales to trial [as a witness] as his recorded phone call was used as evidence to support a 'conspiracy' conviction against [] Petitioner" (Docket Entry 56 at 4; see also id. at 12 ("There was no attempt to contact [] Morales to determine if was [sic] a truck mechanic or a drug dealer."), 19 ("Not producing [] Morales was a clear indicator that Counsel was grossly ineffective . . . ."));

B) to "object to the introduction of the phone call from [Morales] the 'phantom witness'" (id. at 4 (indicating that

_____

[2] On appeal, Petitioner "maintain[ed] that the Government failed to present sufficient evidence to convict him of conspiracy . . . ."  Frias-Guevara, 529 F. App'x at 361.  The Fourth Circuit rejected that argument, stating:  "Even if [Petitioner did not conspire with co-defendant Esteban Meneses Vasquez, because the latter had agreed to cooperate with law enforcement officials when he and Petitioner interacted, Petitioner] cannot prevail.  For the Government also presented evidence that another person, Jesus Morales, who did not cooperate with the Government, conspired with [Petitioner] to distribute the controlled substance."  Id. at 362; see also id. ("[T]he facts of the case make quite clear [Petitioner] also conspired with at least one person--Morales--who was not a government agent.").

2

admission of said call contravened Confrontation Clause); see also
id. at 6-12 (arguing that counsel should have objected, on hearsay
grounds, to admission of statements in recorded calls between
Petitioner's co-defendant, Esteban Meneses Vazquez, and individual
identified (by Vazquez) as Morales), 18 ("Amazingly, Counsel did
NOT object to the admission of the statements of [] Morales, via
recorded conversation transcripts. . . . There was more than
adequate evidence to object to the admission of the statements as
they were clearly hearsay . . . ."));[3]

C) "to point out the conversations [between Vazquez and
Morales] were absent any language that would support a conviction
as no drugs were mentioned and no codes were utilized" (id. at 5);

D) "to ascertain who owned the green van [] Petitioner was
driving [on the day of his arrest] and if in fact he was simply
told by his boss to go fix a truck" (id. at 12; see also id. at 14
(suggesting that counsel should have investigated whether owner of
van authorized Petitioner to drive it), 19 ("Why didn't counsel
call the owner of the Dodge Caravan to the witness stand. Should
not the jury have heard how [Petitioner] came to be in possession
of a Van, whose owner lives in Raleigh, NC some 2 hours away [from
the site of Petitioner's arrest].""));

---

[3] The instant Section 2255 Motion spells Petitioner's co-
defendant's name "Va**s**quez," but (to maintain consistency with the
rest of the record) this Memorandum Opinion uses the spelling
"Va**z**quez," even when citing the instant Section 2255 Motion.

E) to conduct an "investigation into who owned the four phones that [Petitioner] . . . was found to be in possession of [on the day of his arrest]" (id. at 12; see also id. at 19 ("How is it an illegal alien has four phones?"));

F) to make an "objection as incident after incident of jurors sleeping was brought to the Court's attention" (id. at 20; see also id. at 24 ("Counsel did not object to the sleeping jurors, counsel failed to move the Court to empanel alternate jurors, counsel failed to move for a mistrial or a new trial clearly showing that counsel was inattentive to the goings on in the courtroom.")); and

G) to "object to the contradictory testimony offered during the trial [about] . . . all the banging [coming from the inside of the trailer immediately before Petitioner's arrest] when, according to earlier testimony, the tools were there to simply remove the panels and remove the cocaine" (id. at 24).

Petitioner possessed a federal constitutional right to effective assistance of counsel in his criminal case in this Court. See U.S. Const. amend. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To establish a claim of ineffective assistance, Petitioner must show that his attorneys' performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-94 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a

4

most deferential one." <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); <u>see also</u> <u>United States v. Basham</u>, 789 F.3d 358, 375 (4th Cir. 2015) ("[T]o succeed on his ineffective assistance claims, [the petitioner] is not entitled to satisfy the prejudice requirement through rank speculation . . . ." (internal quotation marks omitted)). None of Petitioner's ineffective assistance claims clear <u>Strickland</u>'s high bar.

### A. Failure to Call Morales as a Witness

According to Petitioner, his "[c]ounsel was grossly ineffective for failing to bring [] Morales to trial [as a witness] as his recorded phone call was used as evidence to support a 'conspiracy' conviction against [] Petitioner." (Docket Entry 56 at 4; <u>see also</u> Docket Entry 48 at 78-85, 87-94 & 100-10 (setting forth testimony by Vazquez regarding his recruitment by Morales to drive a tractor-trailer containing cocaine (secreted in the trailer's refrigeration unit) from Texas to North Carolina, the discovery of the cocaine during a traffic stop in route, Vazquez's agreement to cooperate with law enforcement, his subsequent receipt of instructions (via telephone) from Morales to call a specified number to arrange the off-loading of the cocaine, Vazquez's conversations with Petitioner upon calling that number, Vazquez's identification of recordings of those communications with Morales and Petitioner, Vazquez's interaction with Petitioner at the arranged off-loading site, and law enforcement intervention as

5

Vazquez and Petitioner began off-loading the cocaine), 141-48 (documenting admission of English-language transcripts of recorded calls identified by Vazquez).) Petitioner apparently would have the Court condemn his counsel for not calling Morales as a witness to ask if Petitioner and/or Morales trafficked drugs. (See Docket Entry 56 at 12 (complaining that counsel did not "contact [] Morales to determine if was [sic] a truck mechanic or a drug dealer").) In response, Petitioner's counsel averred that they "believed . . . Morales was located somewhere in Mexico. [They] could not locate him nor could [they] compel his presence in court." (Docket Entry 62-1 at 1 (internal quotation marks omitted); see also Docket Entry 62-2 at 1 (adopting Docket Entry 62-1).) Petitioner's reply offers no basis to question those sworn representations by officers of the Court. (See Docket Entry 65.)[4]

---

[4] Notably, even if Petitioner's counsel could have secured Morales's presence at the trial, Petitioner has posited no reason to doubt (given the evidence recognized by the Fourth Circuit of Morales's involvement in drug trafficking) that Morales would have invoked his Fifth Amendment right against testifying. (See Docket Entries 56, 65.) Nor, under the circumstances presented, could the Court have compelled the United States to grant Morales immunity. See generally United States v. Gravely, 840 F.2d 1156, 1160 (4th Cir. 1988) ("The district court lacks power to itself grant immunity. The decision of whether to grant immunity is in general vested with the prosecution. The defendant bears a heavy burden when seeking to have the district court compel the grant of immunity. The Fourth Circuit rule is that the prosecution will be required to confer immunity when (1) the defendant makes a decisive showing of prosecutorial misconduct or overreaching and (2) the evidence supplied would be clearly material, exculpatory and unavailable from any other source." (internal citations omitted)).

6

In any event, Petitioner's instant claim fails because "mere speculation that [Morales] would have been helpful does not establish ineffective assistance." Anderson v. Ducart, No. 11CV2636JST(PR), 2015 WL 694767, at *13 (N.D. Cal. Feb. 18, 2015) (unpublished), appeal filed, No. 15-15471 (9th Cir. Mar. 13, 2015); see also Basham, 789 F.3d at 375 ("[The petitioner] is not entitled to satisfy [Strickland's] prejudice requirement through rank speculation . . . ." (internal quotation marks omitted)); Davis v. Clarke, No. 3:13CV119, 2014 WL 693536, at *4 (E.D. Va. Feb. 21, 2014) (unpublished) ("Where a petitioner faults counsel for not calling a witness, the petitioner must provide 'concrete evidence of what the witness would have testified to in exculpation,' so that the reviewing court can adequately assess the significance of the decision not to call the witness." (internal brackets omitted) (quoting United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004))), appeal dismissed, 577 F. App'x 157 (4th Cir. 2014).

B.  Failure to Object to Morales's Recorded Statements

Next, Petitioner has asserted that his counsel should have objected to the introduction at trial of the transcribed (and translated) content of recorded telephone communications between Vazquez and Morales. (See Docket Entry 56 at 4, 6-12, 18.)  In that regard, Petitioner's instant Section 2255 Motion first suggests that his counsel should have argued that the admission of such statements violated the Confrontation Clause, as construed in

7

*Crawford v. Washington*, 541 U.S. 36 (2003).  (See *id.* at 4.)
Petitioner's instant Section 2255 Motion also maintains that his
counsel should have challenged those statements as hearsay (and,
more specifically, as outside the purview of Federal Rule of
Evidence 801(d)(2)(E), which defines statements by a co-conspirator
in furtherance of a conspiracy as non-hearsay).  (See *id.* at 6-12,
18.)  Those arguments fall short for inter-related reasons.

As an initial matter, the Fourth Circuit has held that:

1) "*Crawford* and later Supreme Court cases make clear [that]
a statement must be 'testimonial' to be excludable under the
Confrontation Clause," United States v. Udeozor, 515 F.3d 260, 268
(4th Cir. 2008) (citing Davis v. Washington, 547 U.S. 813 (2006),
and Crawford, 541 U.S. at 51); and

2) "statements by a co-conspirator during the course of and in
furtherance of the conspiracy . . . are not testimonial statements
under *Crawford*," United States v. Sullivan, 455 F.3d 248, 258 (4th
Cir. 2006) (citing and quoting Crawford, 541 U.S. at 56, for its
statement that "'not testimonial – for example, are statements in
furtherance of a conspiracy'" (alterations omitted)); see also
Gamble v. Hoke, No. 2:10CV690, 2011 WL 4528386, at *13 (S.D.W. Va.
July 14, 2011) (unpublished) ("Several circuit courts of appeals
have similarly ruled that out-of-court statements by co-defendants
or co-conspirators, unwittingly made to a confidential informant
and recorded by the government, are not 'testimonial' for the

8

purposes of the Confrontation Clause and *Crawford* [because the declarant made the statements to further a conspiracy].” (citing United States v. Watson, 525 F.3d 583, 589 (7th Cir. 2008), United States v. Mooneyham, 473 F.3d 280, 286-87 (6th Cir. 2007), United States v. Hendricks, 395 F.3d 173, 182 n.9, 184 (3d Cir. 2005), and United States v. Saget, 377 F.3d 223, 229 (2d Cir. 2004))), recommendation adopted, 2011 WL 4528302 (S.D.W. Va. Sept. 28, 2011) (unpublished), appeal dismissed, 470 F. App’x 120 (4th Cir. 2012).

Additionally, during the trial, the Court (per now-Chief Judge Osteen) determined that Morales’s statements to Vazquez qualified as admissible, co-conspirator statements. (See Docket Entry 48 at 4 (“[W]e have some testimony about statements made from . . . Morales calling [Vazquez] from somewhere . . . . [G]iven my role in determining whether or not that coconspirator exception would apply -- it looks to me like [given] the Government’s evidence at this point, certainly on a preponderance standard . . . there is a conspiracy established, and the statements [by Morales] . . . would all be arguably in furtherance . . . of and in the course of that conspiracy.”), 86-87 (“[I]t seems to me Morales or Jesus is part of the conspiracy, as I previously found, and [Vazquez is] getting instructions on where to deliver this trailer that’s got cocaine on it. . . . [I]t seems to me we’ve got [evidence that Morales] provid[ed] a trailer, and we have [the trailer’s] delivery to the location [specified by Petitioner when Vazquez called the telephone

9

number provided by Morales], so [those statements] would come in as part of the conspiracy.").)  In other words, any objection by Petitioner based on <u>Crawford</u> or hearsay principles would have come to naught, because the Court ruled Morales's statements admissible under Federal Rule of Evidence 801(d)(2)(E), notwithstanding the lack of an objection.  As a result, Petitioner's instant claim fails as a matter of law.  <u>See Oken v. Corcoran</u>, 220 F.3d 259, 269 (4th Cir. 2000)  ("[C]ounsel was not constitutionally ineffective in failing to object . . . [when] it would have been futile for counsel to have done so . . . .").[5]

## C. Failure to Argue that Morales's Statements Lacked "Drug" Content

Petitioner's instant Section 2255 Motion also states that his counsel "failed miserably in failing to point out the conversations

---

[5] To the extent Petitioner's instant claim suggests <u>Crawford</u> and/or hearsay objections to the admission of Morales's statements should have succeeded because the United States did not present adequate evidence to show the existence of a conspiracy between Morales and Petitioner by a preponderance (as required by Federal Rule of Evidence 801(d)(2)(E)) (<u>see</u> Docket Entry 56 at 8), that suggestion falls flat given the Fourth Circuit's holding that the United States introduced sufficient evidence of such a conspiracy to support Petitioner's conviction beyond a reasonable doubt, <u>see</u> <u>Frias-Guevara</u>, 529 F. App'x at 362.  Similarly, although Petitioner has asserted that Morales's statements constituted "nothing more than idle chatter  . . . [because] cocaine [was not] specifically addressed in the recorded conversation" (Docket Entry 56 at 10), for reasons discussed below in Subsection II.C., the Court properly concluded that Morales's directive to Vazquez to call a particular telephone number for instructions about where to take the trailer after off-loading the legitimate cargo represented a statement "intended to promote the conspiracy's objectives," <u>United States v. Shores</u>, 33 F.3d 438, 443 (4th Cir. 1994).

[between Vazquez and Morales] were absent any language that would support a conviction as no drugs were mentioned and no codes were utilized." (Docket Entry 56 at 5; see also id. ("During one conversation, Vazquez was told to simply go home and be with his family because of an impending hurricane. Morales told him to call Wal-Mart and see if they could change his appointment [for delivery of his legal cargo]. No talk of drugs. No urgency, just go home and be with your family. During the second conversation, . . . Morales tells [Vazquez that Morales is] going to give [Vazquez] a number so [Vazquez] can talk to the people. [Morales] provides the number of (919) 201-2803. Amazingly, [Morales] doesn't know where the number goes. He states, 'I think it goes to Greensboro.' He tells Vazquez, 'yeah or if you want to call him and let him know when you will be ready around there so, you can let him know, or however you want to do it.' Finally [Morales] closes by saying, 'ok well call me tomorrow then. If you want.' These are hardly the directives of a drug dealer to a courier." (internal citations and emphasis omitted)).) This claim lacks merit.

At trial, Vazquez testified that he agreed to drive a tractor-trailer with cocaine hidden in the trailer's refrigeration unit to North Carolina for Morales (whom Vazquez had met several months earlier), but that, during a traffic stop in route, a law enforcement officer discovered the cocaine and Vazquez then began cooperating with law enforcement officials to identify others

11

involved in the cocaine trafficking operation. (See Docket Entry 48 at 78-83, 111-12.) Vazquez further testified that "prior to [that trip] . . . [Morales] asked [Vazquez] . . . to take drugs somewhere . . . [t]wo other times. But because [Vazquez] had to go to Mexico because of [an] illness, [he] didn't do it." (Id. at 108.) However, Vazquez "agree[d] to do it this time . . . [because he] needed the money . . . ." (Id.; see also id. at 118 ("Q. [D]id you [Vazquez] agree or conspire with [] Morales to transport cocaine? Yes or No? A. Yes.").)

Given the foregoing testimony, the recorded telephone call in which Morales gave Vazquez a number to call after delivery of the trailer's legitimate cargo constitutes powerful circumstantial proof of a conspiracy between Morales and Petitioner, when viewed together with the evidence that (1) Vazquez called the number provided by Morales and spoke with Petitioner, and (2) Petitioner agreed to meet Vazquez, led Vazquez to a secluded location, and began accessing the cocaine hidden in the trailer's refrigeration unit (see Docket Entry 47 at 54-63; Docket Entry 48 at 54, 59-62, 82-85, 87-94, 100-10). In light of such evidence, an argument that no conspiracy existed between Morales and Petitioner because of the absence of references to drugs in the conversations between Vazquez and Morales lacked any plausible prospect of success. In the words of the Fourth Circuit, "the facts of the case make quite clear

12

[that Petitioner] conspired with . . . Morales . . . ." <u>Frias-Guevara</u>, 529 F. App'x at 362 (emphasis added).

The instant claim thus cannot succeed. <u>See generally</u> <u>United States v. Galloway</u>, 749 F.3d 238, 241 (4th Cir. 2014) ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)).

<u>D. Failure to Present Evidence about Owner of Van</u>

Petitioner further has objected to his counsel not "attempt[ing] to ascertain who owned the green van [] Petitioner was driving [on the day of his arrest] and if in fact he was simply told by his boss to go fix a truck." (Docket Entry 56 at 12.) As to the first of those points, the record indicates that Petitioner's counsel well-knew the name of the owner of the van driven by Petitioner on the day of his arrest, as evidenced by his counsel's cross-examination of the case agent about the owner of the van (<u>see</u> Docket Entry 48 at 39-40); moreover, Petitioner claims to have worked for the van's owner and to have driven the van at the owner's direction (<u>see</u> Docket Entry 56 at 14-15), matters which he surely brought to his counsel's attention (or should have, if he deemed them significant). No ineffective assistance claim

13

therefore can rest on any supposed failure of Petitioner's counsel to learn the identity of the van's owner.

Regarding the second, above-quoted point raised by Petitioner (i.e., the purported failure of his counsel to ascertain whether Petitioner "was simply told by his boss [the owner of the van] to go fix a truck" (id. at 12)), it would appear that only two potential witnesses existed, Petitioner and the owner of the van. (See id. at 14-15 (setting forth Petitioner's account of how he came into possession of van and into contact with Vazquez).) Petitioner, however, neither has alleged that he wished to testify at trial about those (or any other) matters nor has explained how his counsel could have compelled the van's owner to testify (much less what testimony the van's owner would have given, if he inexplicably opted against asserting his Fifth Amendment privilege). (See id. at 1-26; Docket Entry 65 at 1-10.) Those circumstances defeat any ineffective assistance claim predicated on the failure of Petitioner's counsel to mount a defense based on alleged instructions the van's owner gave Petitioner (or other events that would have required testimony from Petitioner or the van's owner (see Docket Entry 56 at 14 (suggesting that counsel should have investigated whether owner authorized Petitioner to drive van), 19 ("Why didn't counsel call the owner of the Dodge Caravan to the witness stand. Should not the jury have heard how [Petitioner] came to be in possession of a Van, whose owner lives

14

in Raleigh, NC some 2 hours away [from the site of Petitioner's arrest].")))). See Basham, 789 F.3d at 375 ("[The petitioner] is not entitled to satisfy [Strickland's] prejudice requirement through rank speculation . . . ." (internal quotation marks omitted)); Boutte v. Biter, 556 F. App'x 623, 625 (9th Cir.) (reversing habeas relief for ineffective assistance in the form of failure to present evidence, because the petitioner "does not contend he would have testified at trial . . . and he cannot rely on speculation about what [other] witnesses might have said to show prejudice"), cert. denied, ___ U.S. ___, 135 S. Ct. 453 (2014); Anderson, 2015 WL 694767, at *13 ("[M]ere speculation that [a witness] would have been helpful does not establish ineffective assistance."); Davis, 2014 WL 693536, at *4 ("Where a petitioner faults counsel for not calling a witness, the petitioner must provide 'concrete evidence of what the witness would have testified to in exculpation,' so that the reviewing court can adequately assess the significance of the decision not to call the witness." (internal brackets omitted) (quoting Terry, 366 F.3d at 316)).

    E.  Failure to Address Ownership of Cellular Telephones

    The instant Section 2255 Motion similarly complains that "[t]her [sic] was no investigation into who owned the four phones that [Petitioner] was found to be in possession of." (Docket Entry 56 at 12.) Petitioner apparently would have the Court grant relief based on the prospect that such an investigation would have

15

connected the telephones in question to the owner of the van driven by Petitioner on the day of his arrest and would have shown telephonic contact with Morales pre-dating Petitioner's alleged employment with the owner of the van. (See id. at 12-13 ("Would it not be shocking to find that all the phones had calls from [] Morales dating back six months before [] Petitioner was emplyed [sic] by [the owner of the van]?"); see also id. at 19 (asking rhetorically: "How is it an illegal alien has four phones?").) The Court should decline to do so for at least three reasons.

First, Petitioner "is not entitled to satisfy [Strickland's] prejudice requirement through rank speculation . . . ." Basham, 789 F.3d at 375 (internal quotation marks omitted). Second, merely linking the telephones seized from Petitioner to the owner of the van would not tend to exculpate Petitioner from the conspiracy with Morales (the proof of which the Fourth Circuit found "quite clear," Frias-Guevara, 529 F. App'x at 362); at most, such a link might suggest that Petitioner and the owner of the van both conspired with Morales to traffic in drugs. Petitioner thus cannot show prejudice on point. See generally Galloway, 749 F.3d at 241 ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable."

16

(internal quotation marks omitted)).  Third, Petitioner neither has asserted that he would have testified about the length of his employ with the owner of the van nor has shown how (or even whether) the van's owner would have testified about such matters. (See id. at 1-26; Docket Entry 65 at 1-10.)  Those circumstances preclude relief.  See Boutte, 556 F. App'x at 625 (reversing habeas relief for ineffective assistance in the form of failure to present evidence, because the petitioner "does not contend he would have testified at trial . . . and he cannot rely on speculation about what [other] witnesses might have said to show prejudice"); Anderson, 2015 WL 694767, at *13 ("[M]ere speculation that [a witness] would have been helpful does not establish ineffective assistance."); Davis, 2014 WL 693536, at *4 ("Where a petitioner faults counsel for not calling a witness, the petitioner must provide 'concrete evidence of what the witness would have testified to in exculpation,' so that the reviewing court can adequately assess the significance of the decision not to call the witness." (internal brackets omitted) (quoting Terry, 366 F.3d at 316)).

### F.  Failure to Object to Sleeping Juror(s)

Petitioner additionally has sought relief based on the allegation that his counsel "sat idly by, without ever so much a [sic] lodging a question, let alone an objection as incident after incident of jurors sleeping was brought to the Court's attention." (Docket Entry 56 at 20; see also id. at 24 ("Counsel did not object

17

to the sleeping jurors, counsel failed to move the Court to empanel alternate jurors, counsel failed to move for a mistrial or a new trial clearly showing that counsel was inattentive to the goings on in the courtroom.").)  As support for this assertion of "incident after incident of jurors sleeping," Petitioner's instant Section 2255 Motion identifies only two instances (one during the presentation of prosecution evidence on the second day of the trial and the other during the instruction of the jury on the third day of the trial).  (See id. at 20-21 (citing Docket Entry 48 at 96; Docket Entry 49 at 34-35).)  On each of those occasions, the Court took remedial action, reducing the temperature in the courtroom (see Docket Entry 48 at 96) and taking a break from reading the instructions (see Docket Entry 49 at 34-35), respectively.

Consistent with the record, Petitioner's counsel have averred that "[t]he allegations jurors were sleeping was [sic] dealt with by Judge Osteen . . . [and that Petitioner's counsel] did not feel this issue was grounds for a mistrial."  (Docket Entry 62-1 at 2; see also Docket Entry 62-2 at 1 (adopting Docket Entry 62-1).)  The very authority on which Petitioner relied in asserting this claim (see Docket Entry 56 at 22-23 (citing United States v. Johnson, 409 F. App'x 688, 692 (4th Cir. 2011), citing in turn United States v. Freitag, 230 F.3d 1019, 1023 (7th Cir. 2000))) makes clear that his counsel acted reasonably in refraining from seeking a mistrial (or even the removal of any jurors), because "a court is not invariably

18

required to remove sleeping jurors and a court has considerable discretion in deciding how to handle a sleeping juror," Johnson, 409 F. App'x at 692 (quoting Freitag, 230 F.3d at 1023) (internal citation omitted).   In discussing this issue, Petitioner has offered no plausible basis to conclude that, if his counsel had objected, the Court would (or should) have taken different steps (much less that those steps would have led to an acquittal).   (See Docket Entry 56 at 20-24; Docket Entry 65 at 9.)

This claim therefore fails.  See United States v. Robbins, No. 2:10CR6, 2015 WL 2194908, at *4 (W.D. Va. May 11, 2015) (unpublished) (denying ineffective assistance claim premised on failure of counsel to raise issue of sleeping jurors because the petitioner "ha[d] not shown that, had counsel objected to the sleeping jurors, the outcome of his trial would have been different . . . [particularly given that,] even had counsel brought the issue to the court's attention, a court has 'considerable discretion in deciding how to handle a sleeping juror'" (quoting Johnson, 409 F. App'x at 692)); see also Galloway, 749 F.3d at 241 ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)); Jensen v. United States, No.

19

04CV474, 2007 WL 2042247, at *11 (E.D. Wis. July 11, 2007) (unpublished) ("Generally, courts have been reluctant to reverse a conviction or grant a new trial based on allegations of sleeping jurors. Thus, it follows that the fact that a juror is asleep or inattentive during the course of the trial does not require that a court automatically declare a mistrial, and it certainly does not lead to an automatic reversal of a defendant's conviction and sentence." (internal citation omitted)); Arispe v. United States, No. Civ. 03-10124-BC, 2005 WL 3132211, at *2 (E.D. Mich. Nov. 21, 2005) (unpublished) ("It is not necessarily an unreasonable strategy for a defense attorney to decline to object to juror inattentiveness, especially when the jurors may have been inattentive to the government's case.").

G. Failure to Object to Testimony about Noise inside Trailer

Lastly, Petitioner's instant Section 2255 Motion contends his counsel provided ineffective assistance because they "did not object to the contradictory testimony offered during the trial [about] . . . all the banging [coming from the inside of the trailer immediately before Petitioner's arrest] when, according to earlier testimony, the tools were there to simply remove the panels and remove the cocaine[.]" (Docket Entry 56 at 23-24.) This claim lacks merit because, "[t]o the extent that there is a conflict in a witness's testimony, such a conflict affects the weight of the testimony, not its admissibility." Palazzo ex rel. Delmage v.

20

Corio, 232 F.3d 38, 44 (2d Cir. 2000); accord Loughan v. Firestone
Tire & Rubber Co., 749 F.2d 1519, 1523 (11th Cir. 1985); see also
Perry v. New Hampshire, ___ U.S. ___, ___, 132 S. Ct. 716, 723
(2012) ("The Constitution, our decisions indicate, protects a
defendant against a conviction based on evidence of questionable
reliability, not by prohibiting introduction of the evidence, but
by affording the defendant means to persuade the jury that the
evidence should be discounted as unworthy of credibility.");
Garrison v. United States, 62 F.2d 41, 42 (4th Cir. 1932) ("[U]nder
the constitutional guaranty of trial by jury, it is for the jury to
weigh the evidence and pass upon its credibility."); Williams v.
Thaler, Civ. Action No. H-08-3298, 2012 WL 217218, at *13 (S.D.
Tex. Jan. 20, 2012) (unpublished) ("Inconsistent or contradictory
testimony of witnesses does not establish perjury, and counsel is
not deficient in failing to make meritless objections.").

### III.  CONCLUSION

Petitioner has established no entitlement to relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion to Vacate
or Set Aside Conviction and Petition for Writ of Habeas Corpus
pursuant to 28 U.S.C. § 2255 (Docket Entry 56) be denied without a
certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 29, 2015